Thank you, Your Honor. May it please the Court. Mr. Box is here once again on remand from this court for limited jurisdictional discovery as to actual authority of consular officials from the Government of Mexico as to its actual authority from the consular officials from the Government of Mexico and the 60B4 motion that was pending. That motion was decided in Mr. Box's favor and then we are now before the Court on is Judge O'Connor's reconsideration of that decision with respect to two issues, principally that he could consider as a jurisdictional fact in the context of a reconsideration the formation of the joint venture between Box and the consulate, which we contend is a jurisdictional fact. I have... You argue, as I understand it, that on remand the mandate rule by exceeding the scope of what had been sent back to the Court. Absolutely, Your Honor. And that is my first point, and I'll go to it since you asked about it. On the scope of remand, whether you call it the law of the case, whether you call it the remand rule, or whether you call it waiver, while we were fortunate to have a member from the first panel, and I won't dwell on it because perhaps the Court knows its mind, the review was for limited discovery on that issue of authority. That's the only issue that had been raised and not decided. The consulate had raised several other jurisdictional issues, personal jurisdiction, excusable neglect, but the only issue that was raised in that original appeal was lack of subject matter jurisdiction under Dale because the foreign state had to include an agent with sufficient authority. And what we would say two things, different from perhaps the briefing, not different from the briefing, but just highlighting from the briefing two issues, I think. One, is this challenge to the court's, the district court's words were he was going to consider the formation of the joint venture, and because he found there was no formation of the joint venture, there could never be authority for it. That's what he considered. And the question then would be, is that something they should have presented earlier? Well, I would say as they noted in their briefing in the first appeal, they, Mr. Suarez continued to work for the government. As they noted in the corporate representative deposition, their corporate representative had talked to both Mr. Suarez and Ambassador Hubbard, and so saying that they never had the ability to factually challenge the formation of the joint venture just doesn't make any sense. That's an issue that was available to them, and they might have raised. They never raised it in their original 60 before motion. They didn't raise it on appeal to this court, and that's really the point of all those rules, is judicial economy. And frankly, Box didn't know that we would be trying this merits fact as a jurisdictional fact until the motion for reconsideration decision. It was never an issue, in fact, the district court did not allow the consulate to amend their 60 before motion, excuse me, to amend their 60 before motion that was originally filed before the first appeal. He said, no, you can't add additional grounds. And this ground was never alleged, and it doesn't fully come out until the supplemental briefing of the 60 before motion. And the district court says, no, no, that's outside our consideration. But then, lo and behold, on a motion for reconsideration, the court says, well, I am going to find that I can consider the formation of the joint venture as a jurisdictional fact. And I'm essentially not raised at all in the first appeal, even though there were numerous, numerous grounds raised in the first appeal. That's exactly right, Your Honor. And, in fact, I went back and listened to my own oral argument, and one of my arguments was, this is a jurisdictional fact. All we're talking about are, do these consular officials have sufficient authority to encompass the acts alleged in the joint venture, which is now an established jurisdictional fact? There was no retort. Judge O'Connor finds first, though, that there was not just apparent authority. There was actual authority, and it was indisputable actual authority. Yes, Your Honor. Yes, Your Honor. In what we call the authority opinion in the briefing, to distinguish it from the joint venture opinion and the reconsideration, the court went through extensive factual findings. He said, I have, I would find authority for the service at the real estate services under whether DeNovo standard or an arguable basis standard. I find it that there's, I guess we call it supplemental jurisdiction, because I've already found that footnote, and if I had to, I would find also an alternative holding that the joint venture was also a basis, there was actual authority for it, whether DeNovo or arguable basis. And to dovetail back to what I was going to say before my first three points is, what's before this court is a lot different than we might have expected when you originally sent us back down on remand, and quite different than what I expected at the beginning of the briefing. The consulate had a cross appeal, which they dismissed. Now, their cross appeal could have challenged all of those factual findings in the original authority opinion, but they don't do that. They could, I mean, they would have had a clear error standard, but they don't do that. And in the joint venture opinion, while I can't say the procedure is straightforward, what the district court did, the district court was very clear about what it was doing in the joint venture opinion. He hearkens back to the factual findings in the authority opinion. He does not vacate that opinion. He reinforces it with respect to the real estate services. And he says, what I'm doing is two things. You raise all these issues on reconsideration, one of them being, hey, manifest error, you should reconsider finding actual authority for the joint venture and the real estate services. He doesn't address that, does not take that up, but instead says, well, you know what, I should have applied the DeNovo standard rather than formation of the joint venture as a jurisdictional fact. And I know that's somewhat challenged in their briefing, but I have to say that's a spurious argument. I will, we go through this. Why would you do that? Why would you look at the formation of the joint venture as to whether or not there's a parent authority to deal with Mr. Box? You should not. Our second point is, it's not a jurisdictional fact at all. And if I may just finish the one point I wanted to make, and I will turn that as our second argument, we didn't highlight this in the reply brief. We go through and said, Judge O'Connor says I'm only doing these two issues. This is all I'm reconsidering. He says it again. All I'm looking at is the formation of the joint venture. And we highlighted those things. But on page 10 of the joint venture opinion, footnote four, I didn't really highlight in the reply brief, but I think it's particularly appropriate because in a citation to a sentence about, the Mexican consulate kept saying Mexican authority doesn't allow for a joint venture. Footnote four, they never proved this. The only Mexican law they put forward and established were the procedures which didn't deal with this issue. But in particular reference to this point, the court says the court need not reach this issue, however, as it resolves the question of whether the consulate gave actual authority for the joint venture on the issue of formation. I mean, any argument that there were stealth factual findings is simply spurious. But to return to our second point, which is jurisdictional fact, taking a step back, a jurisdictional fact in Jackson, I think it's Judge Wiener, went carefully through and said, look, we've got a tension here when you've got a merits fact and a jurisdictional fact. But in that particular case, Jackson, we will allow consideration of it because it was, was there a manufacturing of a firearm in a particular year? And so if it's manufactured, it's in the stream of commerce, if that, then personal jurisdiction under that stream of commerce, I say personal, personal and specific jurisdiction. If there is, if they didn't manufacture in that year, then no personal jurisdiction because no evidence of the stream of commerce. You have that same analysis, the other case they cite for the jurisdictional fact point is Moran. In that case, if you may recall, has the accident on the military base, the Saudi Arabian soldier hit someone. And there the analysis was, we get to look at this, the, whether he was acting in the scope of his employment. That is language pulled out of the Foreign Saudi Immunities Act statute. That is a, a consideration that's specifically in there. But he, so again, if you have it, then you have jurisdiction. In this case, if you have a joint, if you have a joint venture, do you have authority? Not necessarily. That's why the court remanded. If you don't have a joint venture, do you not have authority? The variables aren't dependent. The determination of whether or not there is a joint venture is not dispositive of jurisdiction. And so... How is it dispositive of anything? Whether who, how the, how they ultimately purchased the property? As long as it wasn't with Mr. Box, what difference does it make? Your Honor, I don't think it makes a difference with respect to authority. I mean, that's really... Right. It's whether or not they, when they dealt with him, did they have the authority to deal with him and to commit themselves. And how they ultimately proceeded doesn't have to do with how they dealt with him. Does it? We agree 100% that the... I'll ask the other side. Right. The question is, did that consular official have authority to undertake the acts he was alleged? And under the district court's factual findings, it's unquestionable that he did. What they try to shoehorn in is a merits analysis of, well, we're not just going to look at does the agent have authority, but we're going to look at, well, if there wasn't a contract, I don't have to get to authority. But denying a merits fact doesn't work to make it, turn it into a jurisdictional fact. But we don't even reach this point if we agree with your previous point about the law of case. Exactly. The law of the case is the first argument. About the default. We've gotten into these attorney's fees that you've looked for. And what if the law is that you're not entitled to attorney's fees because they're foreign government and that's not provided for in the attorney's fees statute? Then the default has an attorney's fees award in it. What result? Well, Your Honor, it's not a jurisdictional issue. It's something they didn't ever challenge. They didn't challenge in the last appeal that it was flawed on its face because it, I agree with that, assuming that's true. Then what still, do we, should we go back and vacate that part? Or it's voidable and they didn't seek to void it and so they lose. And so you get your attorney's fees. Well, Your Honor, we would say we get our attorney's fees for the So they didn't challenge it. They didn't even list it as a merits defense for the excusable neglect argument. But to be clear what happened below, I mean, you have the 60 before motion pending. You get the authority opinion and now you have a final judgment. He says I'm not going to deny the motion to set aside. You return to the default judgment, which had attorney's fees explicitly in it. They don't even move to reconsider those attorney's fees. I mean, that issue, they did not present the award of attorney's fees. I do think it would have been appropriate, but they did not do to say, you know what, the calculation of the amount, we challenged that. And while the award of the attorney's fees was established, the amounts that we submitted, they could have challenged below as, you know, that was too much or for whatever reason you don't have a billing statement for that particular item. All the sort of back and forth you get into an attorney's fees cases. I just don't think that they can come back and having never challenged and preserve that issue, even in the reconsideration and say, um, and say we get to challenge the legal right to the award of attorneys. When did they first raise that, that you were not entitled to attorney's fees at all? When was the very first time that was raised in response to our motion to increase the amount of attorney's fees post the joint venture opinion? So, the authority opinion included attorney's fees. We went back to the original default judgment. They filed within the time period the motion for reconsideration, which delayed the consideration, and then we filed a motion to increase the amount of attorney's fees due to the six years of jurisdictional back and forth after the joint venture opinion. What's your best case that it's too late for them now to challenge the attorney's fees? Well, I guess what I would have to say is whether it's Jackson or any of the cases that talk about the merits having been determined, I mean, you only get to go back and challenge the legal conclusions and the merits. I mean, all they have preserved is a subject matter jurisdiction challenge to whether the consular officials had sufficient authority. So, I don't think that they can come back and make that belated challenge. I wouldn't know the third point, which I didn't get to, the burden of whether the court procedurally and substantively erred when he did his consideration. If you get past, was this in the scope of remand, and you get past, is this a jurisdictional fact, which we say no to each, the burden of proof is the same problem we had in the first appeal. On the one hand, literally on the same page that he finds that the consulate bears the ultimate burden of proof on page 17 of his joint venture opinion at 1399, just above it, he concludes because a joint venture, nevertheless, Bachs bears the burden of proving that a joint venture existed, and he has failed to do so. And in the previous two pages, he says, Bachs didn't offer any evidence or produce a writing or fail to present evidence as to the remaining factors. Well, we didn't even know this was going on. In point of fact, the reconsideration motion filed didn't even mention Texas joint venture law or the elements. I mean, this was essentially a trial on the quintessential merits argument under the guise of it being part of authority and a jurisdictional issue. We weren't even informed. We never briefed it. We never went through discovery on it, but they never sought to change this court's mandate or increase it. They never raised this as a factual dispute on the formation of the joint venture until after discovery and all the briefing is complete. All right. Thank you, Mr. Dennis. Save time for rebuttal. Mr. McComas, Ms. McComas, excuse me. Thank you. May it please the court. Debbie McComas on behalf of the Dallas Mexican Consulate General. The real question here, and you mentioned the mandate, so let's just start with that. The real question here is when you sent this case back for determination of actual authority, what did that mean? And it's something we've struggled with in this case because in its worst sense, Mr. Dennis's argument would swallow up Rule 60 before and you would never be able to challenge it because in this case, what he pled and what the judgment against the consulate is on is for breach of fiduciary duty. And all of his pleadings and the judgment is against the consulate to enter into a joint venture with Mr. Box and his investors for the purchase of 1210 Riverbend. So it is a real estate relation, a joint venture for the purchase of real estate. When we went back down, the question is when you start looking fact intensively at exactly what the consulate approved or what they were authorized to approve and what the Mexican government approved, you can't divorce what the underlying transaction was supposedly to be. So as you dig deeper into that issue, you find, and it's helpful if you look, I actually think the district court went further than he had to. I don't think he had to go so far as to find that there was no joint venture, to find there was no authority for it. But his fact findings in his final decision support that before you even get to that final conclusion. When was the first time that you raised the question of existence or non-existence of joint venture? In our very first motion to set aside the default judgment, before we came up on appeal the first time, I'm reading from the opening brief. It says, with no documentation to support his bald assertions, Box filed a lawsuit against the consulate on June 16, 2008. The complaint asserts claims for breach of contract fraud, breach of fiduciary duty, and a litany of equitable theories, all arising out of the consulate's alleged failure to comply with an agreement that necessarily could not exist. Now, he's right. This was not the issue on appeal because we had won. We weren't the appellant. It was Mr. Box and the issue that was on appeal was whether he needed more discovery to go forward. I'm sorry. Can you say that again? I'm sorry. Does it later in the next paragraph of the document talk about the joint venture, which you just read to us doesn't have to do, doesn't say the joint venture is somehow flawed under Texas law or something like that? No, that's right. Is that all you have? It's throughout. It was part and parcel. I want to say, you're right, we never went in and said, as a matter of law, on a merits, they lose on the joint venture. What we said is you can't separate the joint venture analysis from what we approved. Let me get back to what the facts are that he found. Did you say joint venture in that document, the words joint venture? Yes. We were trying to get our hands around what the transaction was we supposedly approved. What document is that you were reading? This is the Dallas Mexican Consulate General's motion to set aside the default judgment. It's the original default motion that we filed. The version I'm looking at is from the 10953 record at 447. Let me get back. You've been asked three times and we still haven't heard you pointing or seen you pointing to anything where you actually used the word joint venture or questioned the existence of a joint venture. Mr. Smith, I don't have, excuse me, Judge Smith, I don't have that highlighted in here, but I know it was in the motion and we laid out in our brief places where we challenged. I will admit what we said is there's no authority for Mr. Box's transaction and that transaction was a joint venture to purchase property. But it wasn't there was no authority because under Texas law the joint venture is somehow not legally cognizable. It was there was no authority because the person didn't have the authority to contract. Isn't that what you really argued? There's no authority for the transaction that Mr. Box alleged. And that, I think, is what we've continued to argue. But it's because the person, you argued to us last time, because the person didn't have the Mexican government's authority and the idea was that he was acting ultra vires or something, which just turned out not to be the case at all, right? No, we argued there was no transaction with Box at all, which is completely true, and I think the district court found that on remand as well. But we also argued and have continued to argue that there's no authority for the transaction that Box alleged. That transaction cannot be you can't separate the real estate services from the joint venture piece of that. You didn't argue that to us before, though. You did not argue that in your prior appeal, even though you argued numerous, numerous reasons why there were problems with the default. Specific to the joint venture law? That's correct. You never argued that under Texas law. With respect to the joint venture. What I'm trying to say is those same facts that are relevant that you remanded for us to find that are relevant to the ultimate conclusion that the judge made that there is no joint venture are also relevant to what was or was not approved or authorized. And specifically, the district court on remand in the second decision found there was no authority for any transaction with Box. I think that's been established at this point, or his investors. He also found in looking at the elements of whether or not there was a partnership or a by the Mexican government to enter into a joint venture with Box. What did the first panel say in regard to whether there was a joint venture? They didn't reach it. We had, even with our meritorious defenses, which was not, I mean, the existence of the joint venture, we were really arguing statute of frauds at the time. They simply said those claims were too late. So the first opinion in. Would we have said joint venture was too late? If you would ask joint venture, just like we said all the other ones? Oh, absolutely. I think if we were challenging on the merits at that time, that would have been the response. You would have lost joint venture if you had argued it. If we had raised that at the time on the merits. Because all the other ones are too late. So there's no reason that wouldn't also be too late. But none of that decision was on the merits. The decision that it was too late was that it was too late, so you don't get to raise it at all. Wouldn't that have been too late also? If we had raised it just as a merits attack, yes. I think that's the distinction I'm trying to make. And you may or may not go there with me. But the distinction I'm trying to make is that, like in Jackson, in your other cases, there are elements that relate to the ultimate claims in a case that are also relevant to the authorization analysis in a commercial activity. And that's where we are. And that's why I say I think the Court actually went further than it had to. But the fact that the agreement that the consulate supposedly authorized is fictional at best, is extremely relevant to what the Mexican government was looking at in trying to authorize something or not, in this case, not authorize something. This alleged joint venture just never went to Mexico. But wouldn't this have all been wonderful to you to have shown up and all of these things? And they would have been timely. And you could have said, this is fictional and it's fraudulent. And that's why you're in a precarious thing, because it's a default that's already been on appeal and remanded limited. Agreed. Agreed. It's a default. And because of that, we don't get to attack the merits, but we still get to look at whether or not there was authority, because that is a jurisdictional threshold question. And here— What do you have to say about the other side's position that they didn't have an opportunity to bring forth their—to depose people on—if the court was going to get into joint venture on jurisdiction, they didn't have notice and they didn't get depositions in? They had notice. We were screaming it from day one when we went back down, we want Mr. Box's deposition. Mr. Box kind of stonewalled us in the first deposition. We had to move for a second deposition. We were digging deep to figure out what really happened so that we could figure out what was authorized. And we went to the original seller and subpoenaed those documents. He opposed that. He complained about it. But at that point, he wasn't asking for his own discovery or digging deeper. And this is actually different. When you sent us back last time, one of the reasons was because all of the information on authority you found was within our control. But what the joint venture was and whether it was approved and—I mean, all of that was within Box's knowledge and his control. If you would have argued that last time, then perhaps we wouldn't have found that. Isn't that true? If you would have said, well, it's really not all in our control, Your Honor, because we think the whole agreement is jurisdictional and it's in his control, wouldn't that have been something you would have certainly wanted to raise in the last appeal? We had won in the last appeal. You know what I mean? I think at that point— You never said that there were documents in his control when we were asked about that at the last hearing, were you? Can you say that again? Did you ever say there were documents in his control that went to the merit, went to the jurisdictional facts?  We got that discovery, and we can't ignore that when we got that discovery and you get through that process, the district court finds there was no intent to enter into a joint venture with Mr. Box. That is what we got a judgment against us on, is entering into a joint venture with Mr. Box, and you have a finding from this judge that there was no intent to enter into a joint venture with Mr. Box. That should be enough. He also found—I'm so sorry—he also found that any agreement with the Mexican government had to go through an approval process that was in writing, and he found there were no writings to support that. I want to talk real quick about attorney's fees, too, because you asked that question. We found no authorities that support his position that because we had wiped out a judgment, we somehow should have also attacked the attorney's fee award that would have not been in place the last time we were up on appeal. In other words, we knocked out—when you knock out the judgment, we deal with attorney's fees under Rule 54 after the judgment is entered. When we knocked out the judgment in its entirety, there was nothing for us to appeal on attorney's fees because we had won that issue. When it came back down and the judge enters a new opinion, the new opinion is not for the same breach of contract that the original judgment had been entered on. Under Rule 38, under the Texas Rules of Civil Procedure, attorney's fees are awarded on a contract as a whole, and when you award attorney's fees, it's for the successful party and only for the piece they succeeded on. The judgment that you have now is not the same judgment that you had three years ago on the original default, and because of that, we attacked this at the moment it was right for us to attack it. We attacked a new judgment when it was before us, and I believe the statute is very clear that it doesn't apply to municipalities. It only applies to individuals. Before the judgment on remand was entered, was there discussion or briefing on attorney's fees as to either the fact or the amount of fees? No, nor would there have been, because at that point, there was no ground for anyone to recover attorney's fees. In the first case, when the default was entered, we moved to set aside the default judgment. Default judgment is then set aside. At that point, there's no judgment upon which anyone can recover attorney's fees. The statute that Mr. Box invoked to recover attorney's fees allows the successful party in a breach of contract claim only the plaintiff in a successful breach of contract claim to recover. We certainly weren't going to claim the existence of a contract, so there was no attorney fee award at issue then, so by the time it comes up on appeal, there's nothing to argue. Why didn't you have to argue it at your 59E stage? Your 59E stage. Why didn't you have to argue it then? I apologize. I'm not trying to be difficult. No, I'm just having a hard time hearing you. Yeah, I apologize. Well, at that point, it's the same thing. We're trying to knock out the judgment. Right, but as you're trying to knock out the judgment, isn't one of your grounds—and by the way, it included attorney's fees, which are not allowable under the law. It could have been, and if— Shouldn't it have been at 59E, and because it wasn't at 59E, it's too late? No, because we won that one. I think you might be right if that's the judgment we were up here on now appealing. Then we might have lost our chance to argue it, but that judgment was vacated and a new decision was entered that changed the rules again, and in that way, like I said, you have a new contract, so when we get back down, he at first essentially affirms his original decision, denies our motion to set aside the default judgment. Then in our Rule 59E, we say, whoa, whoa, whoa, whoa, you forgot to consider some things, you applied the wrong standard, and he looks at it again, and he sets aside his first judgment, his first decision on remand, and when he does that, there's no contract claim under 38.001 commensurate with what was awarded in his first decision to award, so now we are back to a new judgment, and again, attorney's fees are awardable only for a successful party on the claims that you succeed on in a breach of contract, so we raised that when we should have. This is a really interesting civil procedure final, I think. This could be in law school with all the various proceedings, but if you were not to prevail on your merits arguments today, just assume arguendo, then don't we take you all the way back to the default, and whether or not there's apparent authority, and then because the default exists, and you can't challenge the merits of the default, and it's voidable and not void, then they get the original amount of the attorney's fees, not the increased requested amount of the attorney's fees. Why doesn't it work that way? Why don't we go all the way back if you weren't to win on your win today? Let me cut off one of those assumptions first, and I think I'll get to the second answer, but I'm going to forget if I don't. I think if you were to reverse what the district court did in his final decision, it would be inappropriate to simply King's Act take the decision he decided and has now been set aside. Mr. Dennis wants to argue that the judge simply tweaked a few things in that decision. I don't think that's true, and I'll go back and go to details, but I don't want to miss your other question as well. I think that you can't, and maybe for the same reason, even if he reinstated that first judgment, then all we're talking about is $34,000 in attorney's fees at that point. I think you're right then. If we're stuck with that, and that's where you go, I think we're stuck with the $34,000, but I think we then had a right to challenge anything beyond that, which we did. But you're stuck with the original if we go all the way back, because you can't challenge that. Well, even then, it certainly wouldn't be a render, because at that point, I think you should remand to the district court, because there's still a challenge that we did raise timely at the 54 stage as to whether or not any attorney's fees were tied to the successful claims. I would suggest you'd send that back for Rule 54 analysis by the district court. Let's go back to the issue before that as to what controls, if you don't like what the I think that the court changed his findings. He did more than just tweak a few things. In that first opinion on remand, he said, I apply the arguable basis standard, but I would reach the same conclusion under DeNovo. He found that the consulate was bad guys, and he made some findings, and then in his He flipped on his findings, and he found that Mr. Box was not credible, and he found, let's be clear, he found he was not credible, because what he said was the deal we were able to show wasn't possibly the deal. So he found that Mr. Box was not credible, and he found there was nothing submitting a joint venture to the Mexican government. There was no intent of the Mexican government to enter into a joint venture. It had to be in writing. There was nothing in writing, so there couldn't have been authority. He goes further. He goes further in that decision, and he also finds that there was no joint venture as a matter of law. I submit to you that's relevant not because of the merits determination, but it's relevant to what was authorized by the Mexican government. You also have evidence in here that the Mexican government joint ventures don't exist under their analysis. So when they're looking at the process here, they're looking at, under Mexican law, they're looking at what they think is approval of an agreement to purchase property on specific terms with a specific owner of the property named Setco. From the Mexican government's standpoint, there is not a single shred of information that tells you that Mr. Box wants to enter into a joint venture and submit the government of Mexico to fiduciary duties in the United States for entering into a business transaction. And the testimony of Yvonne Guzman is that would have never been approved. Now Mr. Dennis wants to say that there's one letter early on that says an investor's going to buy these properties and sell one back to us. The judge specifically found that doesn't say anything about a joint venture or submitting the government to a joint venture. So and the judge made those findings in his second decision. So if you disagree, you believe he went too far, and his findings on their face alone don't support the conclusion that there's no authorization, at a minimum, the solution is to remand to the district court to allow the district court consideration of the facts based on whatever you decide the standard is. So how many years will we go then? I'd love for this case to be over. But as long as it takes, I guess. All right. Thank you, Ms. McComas. Mr. Dennis, you've saved time for rebuttal. Thank you, Your Honor. Just a few points in rebuttal. One with respect to the Rule 60 defamation stating that there would be a factual attack. It's just not there. I have a copy here. It's not there. I would point to one thing that we didn't cite in the briefing on this very point, sort of poignant in retrospect, was in the transcript, we only had one hearing in this case, but in the transcript on page 10, out of the box, Judge O'Connor asks, what does your investigation show happened in connection with the facts of the lawsuit where the other official, according to the complaint, worked with Mr. Box, Mr. Box arranged this deal, and then at the last minute the prior official cut Mr. Box out of the deal. And there's several pages of back and forth with counsel for the consulate, which ends after the questions, and then the counsel for the consulate says on page 16, moving on, I would really like to start with the jurisdictional issues for obvious reasons, because if we are right on the jurisdictional grounds, we don't get to the nasty questions of the merits and having to deal with those issues. And in retrospect, that's very apt, because after losing on authority, they want to get into the nasty issues and sort of shove it through the pigeonhole of authority. While we haven't gotten much into what the discovery showed on the authority issues, I would point out, as they raised, we only, there are no writings or we didn't find any evidence of the joint venture, that on page 2078 to 2079, when we took the deposition of their corporate representative, she admitted that she had talked to Ambassador Hubbard and Hugo Suarez, who were the two principal consular officials at the time of the events that give rise to this litigation, and said, hey, did you ask Ambassador Hubbard when he submitted this proposal that said there's an investor that's going to buy all three buildings and then we've agreed to buy one of the buildings from him? When you talked to Ambassador Hubbard, did he tell you that that was Mr. Box? No, I didn't ask him about it. And I questioned, therefore, you don't know who that investor is? I don't know. The word in Vercingetista in Exhibit 9, you don't know to whom that refers? Answer, no. And so you can't testify today that that doesn't refer to Blake Box, the witness? This is true. I mean, they did not offer the testimony of even their corporate representative to deny the factual existence, much less they have Ambassador Hubbard, they have Mr. Suarez, they could have brought them in and said we're offering their testimony that we never had a joint venture. And it's telling. They don't do that. You never hear from those people. And if we had known this was an issue, if they'd come back to this Court and said we'd like to increase the scope of the mandate, we'd like to raise this new issue, which they could have done, then we would have known that was an issue and that would have been the discovery. We would have fought on the same grounds that it's not a jurisdictional fact, but at least everyone would have known. But from day one, the joint status report of both parties, we said you don't need a discovery from Mr. Box because as we had briefed extensively on appeal, authority is an issue between the principal and the agent, between Mexico and the consulate. And that's why we needed the authority from them, because those communications were all within their purview. So when they asked for discovery from Mr. Box, we did oppose it. We said it's irrelevant to the authority issue. What they told the District Court was, well, if Mr. Box was told there was an authority, that might be relevant. And that's how it all trickled out. We challenged every time they went down this road of merits, we said no, no, no, that's not an issue. And every time they tried to work it back into authority, they don't come out and full challenge, like I said, until the supplemental briefing after discovery is closed. The only other point I would make, well, two additional small points. The flip on his factual findings, we discussed that in my initial argument. That is not, absolutely not what the District Court did. If you look at that language in the joint venture opinion, he did not reconsider factual findings. And as we point out in the reply brief, frankly, he would have had to do very explicitly because he would have had to find a manifest error of law or fact. And in his original opinion, he said, I find actual authority for both of the claims, whether it's arguable basis or de novo. So the fact that he's now looking at Bell Helicopter wouldn't make any difference to his original findings. But he doesn't do that. And the footnotes demonstrate he was very focused on the formation of the joint venture. If that's not a jurisdictional fact, they lose. And then finally, with respect to attorney's fees, I will candidly admit that we don't have a case that deals with this precise issue. I would point out one thing that we haven't discussed, which is they had the opportunity for a direct appeal. And on direct appeal, they could have challenged the attorney's fees. They've not disputed either in the first appeal or this appeal that on the date in which they say we learned at this press conference, they still had seven days to reopen the time for filing a direct notice of appeal or extend the time, excuse me, extend the time. We briefed this in the facts section of our initial brief. And then finally, they could have moved to reopen the appeal when they finally filed their motion. But we ask for the court to reverse and reinstate the original default judgment with the additional attorney's fees. Thank you. Thank you, Mr. Dennis.